## CHAINE *a.* COFFIN.

*Supreme Court, First District; At Chambers, November,* 1863.

PARTIES.—ARREST.—FIDUCIARY CAPACITY.—GUARANTY.

Under an agreement that a manufacturer should consign his wares to B. & M. for sale, and that C. & H., who had guaranteed such notes as might be taken by B. & M., should receive, collect, or otherwise in their discretion dispose of the same ; such notes, and their proceeds in the hands of C. & H., are received in a fiduciary capacity for account of the manufacturer, and may be followed in the hands of any person not a purchaser for value.

An order of arrest may be granted against the debtors in an action to recover moneys received in a fiduciary capacity, although the action seeks incidental equitable relief against transferees of the trust fund.

After a trial by the court, and a decision directing judgment for money, on the ground that it was received in a fiduciary capacity, the court refused to vacate an order of arrest which had been granted on the same ground.

Motion to vacate order of arrest.

This action was brought by James Chaine, executor, in 1857, to recover certain notes and moneys received by the defendants, Edward Coffin and George G. Haydock, alleged to belong to

plaintiff's testator, who had been a linen manufacturer in Ireland, doing business under the name of Wm. Chaine & Son. Coffin and Haydock became insolvent, after having sold a great portion of the notes which they had received, and they made a general assignment for the benefit of creditors. Brown, their assignee, and other persons, were made defendants in this action, with the view of reclaiming the notes and proceeds which had been transferred by Coffin and Haydock.

In April, 1856, the defendants last named had addressed Wm. Chaine & Son as follows:

"For two and one-half per cent. commission on account of sales to be to us paid, we have agreed upon certain terms with Ball & Moore to guarantee to you the proceeds of all sales made by them for your account in the United States. This guaranty to terminate on the 31st day of December, 1858, unless mutually agreed upon to the contrary. Trusting that the energy and good knowledge of business possessed by Messrs. Ball & Moore will be the means of introducing you to a large and profitable business in this country, we remain, &c."

At the same time the defendants made the following agreement with Ball & Moore:

"Articles of agreement between Edmund Coffin and George G. Haydock, composing the firm of Coffin & Haydock, and Augustus F. Ball and Samuel L. Moore, composing the firm of Ball & Moore. Witness as follows:

*First.* In consideration and upon condition of faithful performance on the part of the said Ball & Moore of all and every the matters and things hereinafter mentioned to be by them done and performed, the said Coffin & Haydock hereby agree to guaranty to the firm of William Chaine & Son, of Muckamore, Antrim, Ireland, the payment to them of all accounts, notes, and other bills receivable taken by the said Ball & Moore for sales of goods and merchandise consigned to them by said William Chaine & Son, and sold by said Ball & Moore to the persons and firms named, or to be named, in certain pass-books as hereinafter mentioned and provided.

*Second.* In consideration of the agreement of Coffin & Haydock as above, the said William Chaine & Son hereby agree to pay to said Coffin & Haydock two and one-half per cent. on

the amount of all sales made by Ball & Moore for or on account of said William Chaine & Son; also, that the said Ball & Moore shall and will, on the first day of each month, render and deliver to Coffin & Haydock a full and true statement of all sales of goods and merchandise made by Ball & Moore, for or on account of said William Chaine & Son, during the preceding months, with the names of each person or firm, and the amount sold to each; and at the same time will hand over and transfer to Coffin & Haydock all notes and other bills receivable taken or received, and all book-accounts made within such preceding month for or on account of such sales as aforesaid, to be by them collected, or otherwise in their discretion disposed of.

*Third.* It is mutually agreed that the notes, book-accounts, and other bills receivable to be guaranteed as aforesaid now are, and at all times hereafter shall be, restricted and limited to those made by the persons and firms named in certain pass-books to be kept and used for such purpose; which books are, and at all times shall be, subject to revision, correction, and alteration by Coffin & Haydock, who may also erase, alter, and add thereto either names of persons or firms, or amounts, and shall give reasonable notice to Ball & Moore of their doings in these respects: provided, however, that the indebtedness as aforesaid of no such person or firm, at any one time, shall exceed the amount which at that time shall stand opposite to his or their name in said books.

*Fourth.* All payments and remittances to be made by Coffin & Haydock under this agreement, and shall be made in first-class sterling bills of exchange, payable to the order of said William Chaine & Son.

*Fifth.* This agreement shall remain in full force until the 31st day of December, 1858, unless mutually agreed upon to the contrary.

BALL & MOORE.
COFFIN & HAYDOCK."

NEW YORK, April 1, 1856.

Soon after this, William Chaine & Son consigned goods from time to time to Ball & Moore, which they sold, and deposited the proceeds with defendants, taking their receipts as for account of William Chaine & Son.

Some portion of the proceeds of sales were remitted by de-

fendants to William Chaine & Son. Prior to September 11, 1857, defendants had, however, so received from Ball & Moore a very large amount beyond what they had so remitted.

On the 11th of September, 1857, defendants became insolvent, and the next day Chaine & Son, by Ball & Moore as their agents, demanded a delivery to them of the notes and moneys so received and not remitted; at the same time offering to return the receipts and refund any expenses or advances. This was refused.

The greater part of the notes had been collected by defendants, or procured to be discounted, and they had received the proceeds and applied the same to payment of their own debts.

The defendants, by their answer, claimed the right so to use the proceeds of the notes, under their agreement with Ball & Moore. The action was tried at special term, before Mr. Justice Ingraham; his decision was as follows.

INGRAHAM, J.—Even conceding the agreement of Ball & Moore with Coffin & Haydock to have been admissible in evidence, still I am of the opinion that there is nothing in that agreement to devest the plaintiff of his title to the notes, or to the proceeds of his property sold by Ball & Moore. Coffin & Haydock were guarantors of all the sales made by Ball & Moore. The provisions of that agreement, as I understand them, were intended to protect Coffin & Haydock against any misapplication of the funds by Ball & Moore, and for that purpose they agreed that the notes should be received and handed over to Coffin & Haydock for collection; and as they guaranteed the payments of the notes, they assumed the right to sell the notes in their discretion. In either event, the collection or disposal of the notes was for the account and benefit of plaintiff, and not of Coffin & Haydock. The receipts of Coffin & Haydock for the notes acknowledge the notes to have been received on account of the plaintiff.

If the notes are collected, it cannot be denied but that such collection must be for the benefit of the plaintiff. It would be idle to say that Mr. Chaine intended by the agreement that such collection should be for the benefit of Coffin & Haydock. The authority to dispose of the notes can only be for the same

purpose, coupled with the object heretofore suggested, viz., to protect themselves against loss, if the parties to the notes should become of less responsibility by having authority to sell. If it was intended that Coffin & Haydock were to receive the proceeds of sales for their use, a guaranty of payment would have been useless, and in the place of it there should have been an agreement to pay from time to time the amount of sales made by Ball & Moore, absolutely. If the responsibility of Coffin & Haydock was merely that of guarantor, then the debts guaranteed must have remained the property of the party to whom the guaranty was given.

The construction I have given to the agreements of the parties, disposes of this case so far as the matters are before me on trial. It is only necessary to give the proper directions as to the account to be taken by the referee.

Coffin & Haydock are liable for all moneys received by them, either on collection, or sales of the notes received by them from Ball & Moore, and for all proceeds of sales which, in any way, have come to their possession.

They are also liable for any moneys not paid at maturity of the credits for goods sold by Ball & Moore, if any.

The plaintiffs are also entitled to demand and receive from Coffin & Haydock all notes in their possession, the proceeds of the sales of goods of the plaintiffs, which have not been paid for, by Coffin & Haydock, to the plaintiffs.

The plaintiffs are also entitled to any notes which have been transferred to the assignee Brown, under the assignment, and to receive from him the proceeds of all notes which have come into his hands since the assignment.

Coffin & Haydock having authority to sell the notes, the plaintiffs cannot follow any note sold by them for a *bona-fide* consideration, in the hands of other persons.

Referred to Mr. Yard to take the account, in pursuance of the above directions; and judgment ordered therefor, on filing his report.

The referee reported, and his report was confirmed upon exceptions, after argument at special term, April 14, 1863, and the amount due determined at $87,869.80, with interest from October 20, 1860.

Afterwards, July 27, 1863, before judgment was entered,* an order of arrest was granted upon affidavits setting forth substantially the foregoing facts.

Defendants thereupon moved, upon affidavits, to discharge the order of arrest.

The plaintiff alleged that the agreement of Ball & Moore with defendants had never come to the knowledge of Chaine & Son until after defendants' insolvency; and defendants claimed that it was made by their authority, and they had notice of its contents when it was made.

*William Curtis Noyes*, for the motion.—I. The plaintiff has adopted the agreement of Ball & Moore with defendants, and is bound by it. (Dexter a. Adams, 2 *Den.*, 646.)

II. This being an equitable action, the defendants are not liable to arrest herein, either upon an order or by *ne exeat*. (*Code*, § 178; Fassett a. Tallmadge, 14 *Abbotts' Pr.*, 188.)

III. The defendants' debt is not fiduciary in its character. (Goodrich a. Dunbar, 17 *Barb.*, 644; Angus a. Dunscomb, 8 *How. Pr.*, 14; Bussing a. Thompson, 15 *Ib.*, 97.)

*Albert Mathews*, opposed.—I. The right to have the defendants arrested in this action is grounded upon the cause of action set forth in the complaint. The complaint contains a statement of facts showing one or more of the causes of arrest required by the Code. (§§ 179, 288.)

II. The substantive facts constituting the cause of action cannot be made the subject of dispute, by affidavits, upon a motion to vacate an order of arrest. Unless it is made clearly to appear that the complaint will be dismissed upon the trial, the order of arrest will be retained. (Levins a. Noble, 15 *Abbotts' Pr.*, 475.)

III. The affidavits, etc., produced on the part of the defendants, do not legally controvert the substantial facts set forth in the complaint and affidavits of plaintiff.

IV. The cause has been tried, and all the issues material to the arrest of the defendants have been found in plaintiff's favor. The matters sought to be controverted, both of law and fact, on this motion, are therefore *res adjudicata*.

* Judgment was entered as against Coffin & Haydock, in December, 1863, for $108,245.02.

V. The indisputable facts of this case, therefore, require that the order of arrest should be retained, and the motion to vacate be denied, upon the principles ordinarily applied by this court to similar cases. (Dunaher a. Meyer, 1 *Code R.*, 87; Ostell a. Brough, 24 *How. Pr.*, 274.) 1. The defendants were never authorized to use the plaintiff's testator's moneys for their own benefit. They received the notes for account of plaintiffs. 2. No credit, in respect to these moneys, was ever given by plaintiff's testator to defendants. (Schudder a. Shiells, 17 *How. Pr.*, 420.) 3. Their sole authority to sell the notes was in order to protect themselves against the insolvency of the makers thereof. 4. They received the notes and proceeds solely for the use and benefit of plaintiff's testator, and in order to remit the proceeds to plaintiff. They had no greater or better rights than Ball & Moore, and stood in the same position. (Frost a. McCarger, 14 *How. Pr.*, 131.) 5. There was no authority derived from plaintiff's testator to make any disposition of the proceeds of the notes and goods, other than to hold the same for the exclusive use of the plaintiffs and remit the same to them. (Holbrook a. Homer, 6 *How. Pr.*, 86.) 6. Defendants never had authority, by consent, or contract, or custom, to use this money. They were mere fiduciary bailees of the notes and trustees of the proceeds, and guilty of a fraud in appropriating them to their own use. (Turner a. Thompson, 2 *Abbotts' Pr.*, 444; Stoll a. King, 8 *How. Pr.*, 298.) 7. The fact that the defendants guaranteed the sales of Ball & Moore, did not destroy their fiduciary relation to plaintiff's testator in respect to the notes and proceeds. They stood in no better plight than if they had been the immediate consignees of the goods, and had guaranteed their own sales. In either case, they are liable to arrest. (Ostell a. Brough, 24 *How. Pr.*, 274.) 8. The defendants were not bankers, but rather like an attorney, to whom plaintiffs' agents delivered the notes for collection and remittance.

Ingraham, J.—The question submitted on this motion to vacate the order of arrest was substantially decided on the trial of this cause.

The ground on which the order was granted was, that the debt was of a fiduciary character. It was on that theory that the decision at the trial was made. The notes and accounts

were considered the property of the plaintiffs, and placed in the defendants' hands for collection, and payment over to the plaintiffs, so as to limit their liability on the guaranty of the plaintiff. It was on this account that the judgment allowed the plaintiffs, to follow the notes to the hands of the assignees of the defendants, and to recover the possession from them.

I see no good reason for changing that view of the case, and the motion, therefore, must be denied.